ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
BRIAN C. WARD
Senior Litigation Counsel
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9121
Email: brian.c.ward@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, et al., | ) ) ) | CASE NO. 3:19-cv-02051-IM |
| Plaintiffs, | ) ) | **DEFENDANTS' MOTION** |
| v. | ) ) | **TO RECONSIDER** |
| DONALD TRUMP, et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1 ................................................. 1

MOTION TO RECONSIDER ..................................................................................................... 1

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

    I.    The statutory text and structure of 8 U.S.C. § 1252 make clear that the Court lacks
        jurisdiction over claims arising from or relating to removal proceedings........................4

    II.   The history and purpose of 8 U.S.C. § 1252 further confirm that Congress intended
        to bar district court jurisdiction over the type of claims Plaintiffs seek to raise here. ....11

    III.  Plaintiffs' claims here are cognizable in the PFR process and even if they were not,
        Congress can limit Plaintiffs' ability to bring their claims in this Court........................21

    IV.  Plaintiffs fail to state any claim for which relief can be granted...................................29

CONCLUSION........................................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019) ........................................................................ 24, 25

*Ahmed v. Holder*,
  569 F.3d 1009 (9th Cir. 2009) ............................................................................ 22

*AILA v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) .................................................................... 19, 28

*Ali v. Barr*,
  No. 20-CV-3337, 2020 WL 2986692 (S.D.N.Y. June 3, 2020) ............................ 19

*Alvarez v. Sessions*,
  338 F. Supp. 3d 1042 (N.D. Cal. 2018) ...................................................... 7, 10, 20

*Am. Fed'n of Gov't Employees v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ...................................................................... 26, 27

*Am.-Arab Anti-Discrim. Comm. v. Reno*,
  70 F.3d 1045 (9th Cir. 1995) ........................................................................ 12, 13

*Arizona v. United States*,
  132 S. Ct. 2492 (2012) ........................................................................................ 32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 32, 33, 34

*ASAP v. Barr*,
  409 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 33

*Bhasin v. Gonzales*,
  423 F.3d 977 (9th Cir. 2005) .............................................................................. 23

*Biwot v. Gonzales*,
  403 F.3d 1094 (9th Cir. 2005) ............................................................................ 22

*Block v. Community Nutrition Institute*,
  467 U.S. 340 (1984) ..................................................................................... passim

*Bowles v. Russell*,
    551 U.S. 205 (2007) .......................................................................................... 24

*Briceno-Martinez v. Barr*,
    792 F. App'x 542 (9th Cir. 2020) ..................................................................... 22

*C.J.L.G. v. Barr*,
    923 F.3d 622 (9th Cir. 2019) ........................................................................... 22

*Cancino-Castellar v. Neilsen*,
    338 F. Supp. 3d 1107 (S.D. Cal. 2018) ...................................................... 10, 11

*Castro v. DHS*,
    835 F.3d 422 (3d Cir. 2016) ............................................................................. 28

*Ctr. for Biological Diversity v. Bernhardt*
    946 F.3d 553 (9th Cir. 2019) ........................................................................... 30

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ..................................................................................... 34

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ................................................................................ 10, 20

*DHS v. Thuraissigiam*,
    140 S. Ct. 1959 (2020) ................................................................................ 27, 28

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ................................................................................... 4, 17, 24

*Gill v. Dep't of Justice*,
    913 F.3d 1179 (9th Cir. 2019) ......................................................................... 35

*Guerrero-Lasprilla v. Barr*,
    140 S. Ct. 1062 (2020) ............................................................................. passim

*Havasupai Tribe v. Provencio*,
    906 F.3d 1155 (9th Cir. 2018) ......................................................................... 35

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ......................................................................................... 32

*Hovhannisyan v. Holder*,
    577 F. App'x 748 (9th Cir. 2014) ..................................................................... 23

*Hui Ran Mu v. Barr*,
    936 F.3d 929 (9th Cir. 2019) ............................................................................ 22

*Hurles v. Ryan*,
    752 F.3d 768 (9th Cir. 2014) ............................................................................ 33

*I.N.S. v. St. Cyr.*,
    533 U.S. 289 (2001)...................................................................................... 16, 17

*Innovation Law Lab v. Nielsen*,
    342 F. Supp. 3d 1067 (D. Or. 2018) .............................................................. 10, 11

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) .................................................................... passim

*Jarkesy v. S.E.C.*,
    803 F.3d 9 (D.C. Cir. 2015).............................................................................. 27

*Jennings v. Rodriquez*,
    138 S. Ct. 830 (2018)................................................................................... passim

*Judulang v. Holder*,
    565 U.S. 42 (2011)............................................................................................ 23

*Lair v. Bullock*,
    798 F.3d 736 (9th Cir. 2015) .............................................................................. 8

*Make the Road New York v. Wolf*,
    962 F.3d 613 (D.C. Cir. 2020) ........................................................................ 28

*Martinez v. Napolitano*,
    704 F.3d 620 (9th Cir. 2012) ............................................................................ 18

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)...................................................................................... 30, 31

*Massieu v. Reno*,
    91 F.3d 416 (3d Cir. 1996)............................................................................ 25, 29

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012)........................................................................................ 32

*McKart v. U.S.*,
    395 U.S. 185 (1969)........................................................................................ 27

*McNary v. Haitian Refugee Ctr., Inc.,*
   498 U.S. 479 (1991) ................................................................................ 15, 16, 20

*Mendez-Garcia v. Lynch,*
   840 F.3d 655 (9th Cir. 2016) ................................................................................ 22

*Metro. Life Ins. Co. v. Trujillo,*
   2020 WL 2838528 (C.D. Cal. June 1, 2020) ............................................................ 1

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003) ................................................................................. 9

*Mississippi v. Johnson,*
   71 U.S. 475 (1866) ............................................................................................. 29

*Murcia v. Godfrey,*
   No. C19-587, 2019 WL 5597883 (W.D. Wash. Oct. 10, 2019) ................................. 8

*NAACP v. Trump,*
   298 F. Supp. 3d 209 (D.D.C. Apr. 24, 2018) .......................................................... 31

*Naranjo-Aguilera v. INS,*
   30 F.3d 1106 (9th Cir. 1994) ................................................................................ 23

*Nasrallah v. Barr,*
   140 S. Ct. 1683 (2020) ........................................................................................ 20

*Nat'l Assoc. of Immigration Judges v. McHenry,*
   No. 20-CV-731, 2020 WL 4693166 (E.D. Va. Aug. 6, 2020) ................................. 29

*Norton v. Southern Utah Wilderness Alliance,*
   542 U.S. 55 (2004) ............................................................................................. 35

*Oregon Natural Desert Ass'n v. U.S. Forest Service,*
   465 F.3d 977 (9th Cir. 2006) ............................................................................... 35

*Padilla v. ICE,*
   953 F.3d 1134 (9th Cir. 2020) ................................................................... 11, 18, 19

*P.L. v. U.S. ICE,* No. 1:19-CV-01336,
   2019 WL 2568648 (S.D.N.Y. June 21, 2019) ....................................................... 19

*Raffin v. Gonzales,*
   143 F. App'x 26 (9th Cir. 2005) ........................................................................... 22

*Reno v. Am.-Arab Anti-Discrim. Comm. (AAADC)*,
  525 U.S. 471 (1999) ................................................................................................ passim

*Reyes-Melendez v. INS*,
  342 F.3d 1001 (9th Cir. 2003) ............................................................................... 22

*Rueda Vidal v. DHS*, No. 18-cv-9276,
  2019 WL 7899948, n.17 (C.D. Cal. Aug. 28, 2019) ............................................ 7, 9

*Saavedra Bruno v. Albright*,
  197 F.3d 1153 (D.C. Cir. 1999) ............................................................................ 13

*Sackett v. EPA*,
  566 U.S. 120 (2012) ............................................................................................... 26

*Sangers v. Brown*,
  504 F.3d 903 (9th Cir. 2007) ................................................................................ 34

*Shalala v. Ill. Council of Long Term Care*,
  529 U.S. 1 (2000) .............................................................................................. 23, 24

*Singh v. Gonzales*,
  499 F.3d 969 (9th Cir. 2007) .................................................................................. 5

*Stone v. INS*,
  514 U.S. 386 (1995) ............................................................................................... 12

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ............................................................................ 30, 31

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ......................................................................................... passim

*U.S. ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ............................................................................................... 32

*United States v. Fausto*,
  484 U.S. 439 (1988) ................................................................................................. 4

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*,
  435 U.S. 519 (1978) ............................................................................................... 32

*Viloria v. Lynch*,
  808 F.3d 764 (9th Cir. 2015) ................................................................................ 18

*Wang v. Att'y Gen.*,
   423 F.3d 260 (3d Cir. 2005)..................................................................... 22

*Washington v. Trump*,
   302 F. Supp. 3d 127 (D.D.C. 2018) ......................................................... 29

*Weinberger v. Salfi*,
   422 U.S. 749 (1975)................................................................................. 27

## Statutes

5 U.S.C. § 701 ............................................................................................... 35

5 U.S.C. § 704 ............................................................................................... 34

8 U.S.C. § 1105a ........................................................................................... 12

8 U.S.C. § 1225 ............................................................................................. 28

8 U.S.C. § 1252 ....................................................................................... passim

8 U.S.C. § 1252(a)(2)(D) .............................................................................. 23

8 U.S.C. § 1252(a)(5) .................................................................................... 25

8 U.S.C. § 1252(b)(9) .............................................................................. passim

8 U.S.C. § 1252(g) ........................................................................................ 14

8 U.S.C. § 1329 ............................................................................................. 13

28 U.S.C. § 1331 ...................................................................................... 13, 24

28 U.S.C. § 2341 ........................................................................................... 12

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1

Counsel for Defendants has conferred by telephone with Plaintiffs' counsel, who oppose this motion. The parties made a good faith effort to resolve this dispute but were unable to do so.

## MOTION TO RECONSIDER

The government respectfully moves the Court to reconsider its order denying in part the government's motion to dismiss. ECF No. 79. The Court may reconsider a ruling at any time before final judgment. *Metro. Life Ins. Co. v. Trujillo*, 2020 WL 2838528, at *2 (C.D. Cal. June 1, 2020).

## INTRODUCTION

The Court's order denying in part the motion to dismiss overlooks several arguments raised by the government that require reconsidering the ruling and dismissing this case in its entirety.

First, the Court did not address *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), or the other cases the government cited addressing comprehensive review schemes like the one Congress enacted in the Immigration and Nationality Act (INA). Under this line of cases, when Congress enacts a comprehensive review process that requires claims to be exhausted through an administrative scheme before seeking judicial review, it forecloses all judicial review outside of that scheme. The Supreme Court has repeatedly held that "where such intent is 'fairly discernible in the statutory scheme,'" courts must "find that Congress has allocated initial review to an administrative body" and "delayed judicial review" until after agency review is complete. *Id*. at 207 (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 351 (1984)). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id*. (citations omitted). Here, the statutory text, structure, purpose, history, and review available through the petition-for-review (PFR) process all show that Congress intended to foreclose district court review.

The statutory text and structure of 8 U.S.C. § 1252 are clear that any challenges to the removal process may be brought only in the manner authorized by § 1252. These strict limitations on judicial review apply to "all questions of law or fact" arising from removal proceedings or "arising from *any action*" related to those proceedings. 8 U.S.C. § 1252(b)(9) (emphasis added). As the Ninth Circuit has held, these limitations are "breathtaking" in scope and apply to claims like Plaintiffs' challenging the process by which immigration courts conduct proceedings and issue orders. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031, 1034 (9th Cir. 2016). However, the Court did not apply this binding precedent. Instead, the Court held that *Jennings v. Rodriquez*, 138 S. Ct. 830 (2018) indicated that *J.E.F.M.*'s holding "may be too broad" and read § 1252(b)(9) narrowly. Op. 15. The government respectfully submits that the Court's holding here was in error. *Jennings* held with respect to § 1252(b)(9) only that it did not apply to detention claims and otherwise expressly declined to define § 1252(b)(9)'s scope. Nothing in *Jennings* changed the Ninth Circuit's broad reading of § 1252(b)(9) and the Supreme Court has confirmed *J.E.F.M.*'s broad reading of § 1252 in more recent cases than *Jennings*.

The statute's history and purpose further make clear that Congress intended § 1252 to strip district court jurisdiction over any claims related to how removal proceedings are conducted, including claims by organizations and other individuals who are not in removal proceedings. The INA has long included provisions channeling judicial review to the courts of appeals but courts have at various times held that certain claims fell outside of those channeling provisions. Again and again Congress has responded and amended the INA to clarify its intent to foreclose district court jurisdiction over any claim related in any way to proceedings in immigration court.

The review Congress provided through a PFR provides final confirmation of Congress's intent to eliminate jurisdiction here. The Court's conclusion that § 1252(b)(9) does not "bar

judicial review of claims that [are] unreviewable through the PFR process" and that "most of Plaintiffs' claims" "would not be cognizable through the PFR process," op. 15, 16, is flawed in two respects. First, Plaintiffs concede, as they must, that courts of appeals hear PFR challenges raising bias claims or challenges related to scheduling issues such as those Plaintiffs allege result from the backlog or case-completion benchmarks—precisely the claims that this Court held could go forward. Op. 2. In addition, *Thunder Basin* and similar cases hold that Congress can create a comprehensive review scheme permitting only certain individuals to raise specific types of claims, and in doing so, bar pre-enforcement claims brought by other parties or in other fora. In failing to consider whether congressional intent to foreclose district court review here was "fairly discernible" from the text, structure, and history of § 1252, *see Thunder Basin*, 510 U.S. at 207, the Court applied the wrong test and adopted a narrower reading of § 1252 than Congress intended.

Even if the Court had jurisdiction, Plaintiffs have failed to state any claim upon which relief can be granted. The Take Care Clause is non-justiciable and none of the cases this Court cited hold otherwise. Plaintiffs' bias claim fails because § 1252, properly construed, bars application of the APA's waiver of sovereign immunity to this or any of Plaintiffs' remaining claims, and the Court's holding that a mere possibility of bias is sufficient to survive a motion to dismiss contradicts clear Supreme Court precedent. Finally, the Court did not address the government's argument that Plaintiffs cannot state a claim under the APA where they are challenging agency actions that can separately be challenged in a PFR and incorrectly concluded that the practical consequences of an agency's discretionary choices constitute reviewable "final agency action" under the APA even where there are no associated legal consequences.

The Court should reconsider its earlier ruling and dismiss this case in full.

## ARGUMENT

**I.    The statutory text and structure of 8 U.S.C. § 1252 make clear that the Court lacks jurisdiction over claims arising from or relating to removal proceedings.**

In 8 U.S.C. § 1252 Congress eliminated district court jurisdiction for any claims related to the process by which removal proceedings are conducted. *See* ECF No. 24 at 16-22. The text and structure of § 1252 clearly and unambiguously provide that any challenges relating to removal proceedings, or any action related to those proceedings, may be brought only in the manner and to the extent authorized by § 1252. The Court read § 1252 too narrowly and as a result mistakenly held that it did not bar jurisdiction over all of Plaintiffs' claims. Op. 13-22.

Although the Court correctly explained that "read together with § 1252(a)(5)," "§ 1252(b)(9) requires that any question of law or fact 'arising from'" removal proceedings are reviewable only through the PFR process, the Court incorrectly concluded that these "statutes do not, however, preclude judicial review for all questions of law that may be somehow related to removal proceedings." Op. 14. In reaching that conclusion, the Court applied the wrong framework by holding that "claims that are unreviewable on PFR are necessarily independent and collateral to the removal process and therefore outside the scope of § 1252(b)(9)." Op. 15. The correct framework for assessing the scope of a claim-channeling provision like § 1252(b)(9) that provides a "scheme of administrative review followed by judicial review in a federal appellate court" looks not narrowly to the review specifically authorized in the statutory scheme but rather asks "only whether Congress' intent to preclude district court jurisdiction 'was fairly discernible in the statutory scheme.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) (quoting *Block*, 467 U.S. at 351)). That inquiry must consider the relevant statute's "text, structure, and purpose." *Id.* at 10; *see also Thunder Basin*, 510 U.S. at 207; *United States v. Fausto*, 484 U.S. 439, 444 (1988).

4

Congress's intent to preclude district court jurisdiction over Plaintiffs' claims is clear from the statutory text and structure. Like the statute the Supreme Court held precluded district court review in *Thunder Basin*, which provided that the agency and the courts of appeals had "exclusive jurisdiction over challenges to agency enforcement proceedings," 510 U.S. at 207, § 1252(a)(5) provides that a PFR "shall be the sole and exclusive means for judicial review of an order of removal." Section 1252(b)(9) in turn says that review of any claim arising from removal proceedings or "any action" related to those proceedings is "available only in judicial review of a final order under" § 1252(a)(5). *See Singh v. Gonzales*, 499 F.3d 969, 976 (9th Cir. 2007) ("Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding."); *see also* ECF No. 24 at 16-20.

The Court read § 1252(a)(5) to apply only to review of an "order of removal," and held that it is inapplicable here because "Plaintiffs have not challenged any particular order of removal." Op. 13. Next, the Court read § 1252(b)(9) not to apply because it viewed Plaintiffs' claims as different from the claims that are normally reviewed through the PFR process, op. 15, because Plaintiffs challenge the "*process*" not "any removal order." Op. 16. In doing so, the Court turned the test announced in *Thunder Basin* and similar cases on its head by focusing on what the Court viewed as the specific claims identified in § 1252 rather than the absence of any limitation on the scope of § 1252's channeling for claims related to removal proceedings. *Thunder Basin* held that even where a statute "is facially silent with respect to pre-enforcement claims"—*i.e.*, claims challenging the process leading up to the decision in the "agency enforcement proceedings"— preenforcement claims are similarly foreclosed by a statutory scheme that provides a "comprehensive review process [that] does not distinguish between preenforcement and postenforcement challenges." 510 U.S. at 208. The Court's reading of § 1252's statutory structure

to narrowly channel review only of challenges to removal orders or claims by aliens in removal proceedings contradicts this approach. Section 1252 does not distinguish between pre-removal-order and post-removal-order challenges and thus "demonstrates that Congress intended to preclude challenges such as the present one," 510 U.S. at 208, relating to the pre-removal-order process. *See Reno v. Am.-Arab Anti-Discrim. Comm. (AAADC)*, 525 U.S. 471, 482-83, 485 (1999) (holding that § 1252(b)(9) is a "general jurisdictional limitation" channeling review of all "decisions and actions leading up to or consequent upon final orders of deportation").

The text and structure of § 1252 make this congressional intent even clearer than the statute at issue in *Thunder Basin*. In § 1252(b)(9), Congress provided for "consolidation of questions for judicial review" in the court of appeals, and broadly extended this provision to "*all* questions of law and fact, including interpretation and application" of "statutory provisions" governing removal proceedings and challenges "arising from *any* action taken … to remove an alien." 8 U.S.C. § 1252(b)(9) (emphasis added). Congress was also clear that no district court otherwise "shall have jurisdiction" under any other provision of law to review "such questions of law or fact." *Id.*; *see also* H.R. Rep. No. 109-72, at 172 (May 3, 2005) (Congress's consistent "fundamental purpose" was to consolidate all review in the courts of appeals and "eliminat[e]" "judicial review" through "a suit in a District Court").The Ninth Circuit has held correctly that § 1252(b)(9) applies broadly to "*any* removal-related activity." *J.E.F.M.*, 837 F. 3d at 1031 (emphasis in original).

In ruling on the motion to dismiss, the Court acknowledged *J.E.F.M.*'s holding that § 1252(b)(9) is "breathtaking" in scope and "encompasses even 'policies and practices' relating to the removal process" such as the ones Plaintiffs challenge here, but declined to apply this binding precedent requiring dismissal of all of Plaintiffs' claims because the Court held that it must instead apply *Jennings*, which the Court stated "appears to adopt a somewhat more limited view of the

scope of § 1252(b)(9)." Op. 15. As other courts have held, however, nothing in *Jennings* narrows *J.E.F.M.*, and it remains binding precedent. *See Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048-49 (N.D. Cal. 2018) (holding that *J.E.F.M.*'s ruling on § 1252(b)(9)'s scope remains good law following *Jennings* and applying it to dismiss claims alleging agency practices made it more difficult to secure or maintain pro bono counsel); *Rueda Vidal v. DHS*, No. 18-cv-9276, 2019 WL 7899948, at *11, n.17 (C.D. Cal. Aug. 28, 2019) (courts "must follow" *J.E.F.M.* as "binding circuit precedent" post-*Jennings*). Accordingly, *J.E.F.M.* continues to control and requires dismissal of all of Plaintiffs' claims.

In reaching the contrary conclusion, this Court emphasized language in *Jennings* stating that the words "arising from" in § 1252(b)(9) should not be interpreted in an extreme way that would "lead[ ] to results that 'no sensible person could have intended.'" *Jennings*, 138 S. Ct. at 840. But the test the Court took from this language appears nowhere in *Jennings* and fails to address both how the Supreme Court has directed courts to assess whether Congress intended to remove jurisdiction and the unavoidable conclusion that results from that assessment that Congress *did* intend § 1252(b)(9) to cover these claims. The Court concluded that *Jennings* "settled the question of whether claims that are unreviewable on PFR are necessarily independent and collateral to the removal process and therefore outside the scope of § 1252(b)(9)." Op. 15 (citing *Jennings*, 138 S. Ct. at 840). *Jennings*, however, says nothing of the sort. Rather, the portion of *Jennings* that the Court cites says instead that "the applicability of § 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove these aliens." *Jennings*, 138 S. Ct. at 840.

*Jennings* did list some types of claims that may fall outside of § 1252(b)(9)'s bar because they do not relate to or arise from things that happen in immigration court: a *Bivens* claim

challenging "conditions of confinement"; "a state-law claim for assault against a guard or fellow detainee"; or, a suit by an injured alien against a driver that "hits the bus transporting aliens." *Jennings*, 138 S. Ct. at 840. These claims are easily distinguishable because, unlike Plaintiffs' claims, they do not relate to the conduct of removal proceedings or any action taken in immigration court. And ultimately, *Jennings* was a habeas case challenging detention, *id.* at 839, so it cannot be read to adopt any broader interpretation of § 1252(b)(9) beyond its conclusion that § 1252(b)(9) does not bar detention claims. In fact, the Supreme Court expressly declined to "attempt to provide a comprehensive interpretation" of § 1252(b)(9) and noted that the scope of § 1252(b)(9) was not even briefed in that case. *Jennings*, 138 S. Ct. at 841 ("The parties in this case have not addressed the scope of § 1252(b)(9)."); *see also Murcia v. Godfrey*, No. C19-587, 2019 WL 5597883, at *4, 7 (W.D. Wash. Oct. 10, 2019) (emphasizing that "the parties did not brief the scope of § 1252(b)(9)" in *Jennings*, which highlighted only "detention, assault, and tort claims" as claims that are not "inextricably linked" to removal proceedings and declined to provide any "comprehensive interpretation"). The Supreme Court's express decision not to offer any broader interpretation of § 1252(b)(9) runs contrary to this Court's holding that *Jennings* "settled the question" of what claims fall "outside the scope of § 1252(b)(9)." Op. 15.

This Court correctly noted that *J.E.F.M.* requires dismissal of challenges to "'policies and practices' relating to the removal process," op. 15, such as Plaintiffs raise here. Because *Jennings*' holding with respect to § 1252(b)(9) applies only to detention claims and Plaintiffs raise no detention claims, *J.E.F.M.* applies and requires dismissal. This Court is bound by *J.E.F.M.* unless the Ninth Circuit overturns it or its holding is clearly irreconcilable with a Supreme Court decision. *See Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015) (prior circuit decision binding unless "the reasoning or theory of [that] prior circuit authority is clearly irreconcilable with the reasoning or

theory of higher authority"); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *Rueda Vidal*, 2019 WL 7899948, at *11, n.17 (rejecting argument that court should consider whether *Jennings*' "test differs from the standard announced in *J.E.F.M.*" because court "must follow binding circuit precedent"). *Jennings*' holding on detention claims in a case where the scope of § 1252(b)(9) was not even briefed is not clearly irreconcilable with *J.E.F.M.*'s holding on non-detention claims. Moreover, the Ninth Circuit reached the same conclusion on the outer limits of § 1252(b)(9) in *J.E.F.M.* by holding that it does not apply to habeas challenges to detention. *J.E.F.M.*, 837 F.3d at 1031.[1] And in ruling that § 1252(b)(9) "swallows up virtually all claims that are tied to removal proceedings," the Ninth Circuit held that the applicability of § 1252(b)(9) turns on whether the claims "arise[s] from removal proceedings" or "the removal process," *id.*, just as *Jennings* distinguished the detention claims in that case from claims "challenging any part of the process by which [ ] removability will be determined," *Jennings*, 138 S. Ct. at 841. As this Court acknowledged, "*Jennings* agreed with th[e] framework" set out in *J.E.F.M.* Op. 15.

The text and structure of § 1252, *Jennings*, and *J.E.F.M.* all place challenges related to the removal process at the center of what § 1252(b)(9) covers and Plaintiffs do not dispute that they challenge the removal process. They describe their claims as challenging the "manner in which Defendants administer the removal process." ECF No. 57 at 16. And this Court similarly held that "Plaintiffs' challenge is to the immigration *process*." Op. 16 (emphasis in original). Such claims run headlong into the core of what *Jennings* said § 1252(b)(9)'s "jurisdictional bar" covers— challenges to "any part of the *process* by which [an alien's] removability will be determined. *Jennings*, 138 S. Ct. at 840 (emphasis added). As the plurality opinion explained, "the question is

---

[1] Congress identified this same distinction when it passed § 1252. *See* H.R. Rep. No. 109-72, at 175 (noting that amendments to § 1252 "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders").

… whether *the legal questions* in this case arise from" "an action taken to remove an alien." *Id.* at 841 n.3. "[I]f a claim arises from an action taken to remove an alien, § 1252(b)(9) permits judicial review in only two circumstances: in connection with review of a final removal order and via a specific grant of jurisdiction in § 1252." *Id.* at 854 (Thomas, J., concurring in part). And, as this Court correctly noted, the Supreme Court has affirmed this conclusion in more recent cases holding that § 1252(b)(9) applies to challenges to "the process by which removal will be determined." Op. 14 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020)); *see also Alvarez*, 338 F. Supp. 3d at 1048-49 (noting that it does not require "an expansive interpretation of § 1252(b)(9)'s 'arising from' language to find that" "issues related to legal representation during removal proceedings" "fall squarely within the purview of the provision").

Finally, the other cases that the Court cited in support of its conclusion that § 1252(b)(9) does not bar Plaintiffs' claims merely make the same distinctions identified in *J.E.F.M.* and *Jennings* and cannot save Plaintiffs' claims. *See* Op. 15-16 (citing *Cancino-Castellar v. Neilsen*, 338 F. Supp. 3d 1107 (S.D. Cal. 2018); *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067 (D. Or. 2018)). *Cancino-Castellar* is particularly instructive on this point. The court there held that § 1252(b)(9) did not bar plaintiffs' challenge to the lawfulness of their detention without a hearing—a claim similar to *Jennings*. 338 F. Supp. 3d at 1116-17, 1115 n.7 (noting that *Jennings* petitioners sought "hearings to justify their continued detention"). However, as to plaintiffs' claim challenging the *timing* of when a hearing must occur before an immigration judge—a claim not dissimilar to the claims here—the court held that § 1252(b)(9) *did* bar those claims. *Id.* at 1115-16. The court also cautioned that *Jennings* "should not be read to fashion a free-standing exception to Section 1252(b)(9) based on the mere assertion that a claim is effectively unreviewable" because, "[a]s Justice Alito himself confirmed, a court must decide whether the legal or factual

*question* a plaintiff raises arises from an action taken to remove or the removal process." *Id.* at 1116. And *Innovation Law Lab* dealt with conditions-of-confinement claims, a category of detention-related claims that was specifically discussed in *Jennings*. 342 F. Supp. 3d at 1076-77 (noting that challenge was not to "detainees' removal proceedings" but rather to "conditions of the civil immigrant detainees' pre-hearing confinement").

Plaintiffs' challenges to the immigration process fall squarely within § 1252(b)(9) and must be dismissed for lack of jurisdiction.

**II.    The history and purpose of 8 U.S.C. § 1252 further confirm that Congress intended to bar district court jurisdiction over the type of claims Plaintiffs seek to raise here.**

As to the purpose and history of § 1252 discussed in *J.E.F.M.* and *Padilla v. ICE*, 953 F.3d 1134 (9th Cir. 2020), the Court acknowledged the Ninth Circuit's "recitation of the legislative history underlying" § 1252 that shows Congress "sought to prevent organizations and persons not involved in removal proceedings from bringing 'preemptive challenges to the enforcement of certain immigration statutes,'" op. 20, but the Court held that this legislative history was not relevant because Plaintiffs' claims were not the type of claims Congress intended § 1252 to cover, *see, e.g.*, op. 21. This holding ignores clear precedent and legislative history of the type the Supreme Court has said courts should consider when evaluating jurisdiction-channeling provisions. *See, e.g.*, *Thunder Basin*, 510 U.S. at 209-11. The history of § 1252 resolves any remaining ambiguity and shows that Congress intended § 1252 to apply here.

Congress amended the jurisdictional provisions of the INA through the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996 and the REAL ID Act in 2005 to clarify the broad scope of § 1252 and strip district court jurisdiction over any claims related to removal proceedings. This includes foreclosing claims by organizations and other individuals who are not themselves subject to removal proceedings or the PFR process.

Before IIRIRA, judicial review under the INA was governed by 8 U.S.C. § 1105a, "a special statutory-review provision directing that 'the sole and exclusive procedure for the judicial review of all final orders of deportation' shall be that set forth in the Hobbs Act, 28 U.S.C. § 2341 *et seq*., which gives exclusive jurisdiction to the courts of appeals." *AAADC*, 525 U.S. at 476. Even so, courts often permitted bifurcated review of issues arising out of deportation proceedings on the theory that district court review was the "only means of obtaining factual development" of certain types of claims. *See id.* "Such litigation was possible because courts read § 1105a's prescription that the Hobbs Act shall be 'the sole and exclusive procedure for the judicial review of all final orders of deportation' to be inapplicable to various decisions and actions leading up to or consequent upon final orders of deportation, and relied on other jurisdictional statutes to permit review." *Id.* at 485. In doing so, those courts adopted an analysis nearly identical to this Court's ruling here by holding that district court jurisdiction remained for certain claims related to deportation proceedings because "the provision for exclusive review in the court of appeals" did not apply to claims that courts of appeals "ordinarily cannot review" "as part of [the] review of a final deportation order." *AAADC. v. Reno*, 70 F.3d 1045, 1055 (9th Cir. 1995); *compare with* Op. 16 (holding that "§ 1252(b)(9) does not preclude this court's jurisdiction over" "claims [that] would not be cognizable through the PFR process"). As the Supreme Court has explained, this was contrary to Congress's goal because "Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review." *Stone v. INS*, 514 U.S. 386 (1995).

Through IIRIRA in 1996, Congress sought to eliminate this misreading of the statute. Specifically, Congress "reestablished" that only courts of appeals could review issues related to removal proceedings: "Congress made clear that review of a final removal order is the *only*

*mechanism* for reviewing *any issue* raised in a removal proceeding." H.R. Rep. No. 109-72, at 173 (emphasis added). "[T]hese provisions were intended to preclude all district court review of any issue raised in a removal proceeding." *Id.*[2]; *see also Guerrero-Lasprilla*, 140 S. Ct. at 1071 (noting, in discussing the history of § 1252, that courts "normally assume that Congress is 'aware of relevant judicial precedent' when it enacts a new statute").

IIRIRA eliminated two ways in which district courts had held that the INA's jurisdiction-stripping provisions did not apply to certain claims related to removal proceedings: (1) by finding "jurisdiction lies in the district court pursuant to the federal question statute, 28 U.S.C. § 1331"; and, (2) by finding jurisdiction "pursuant to the general grant of power to review matters arising under the immigration laws, 8 U.S.C. § 1329." *AAADC*, 70 F.3d at 1055. As the government explained, § 1329, which is titled "jurisdiction of district courts," had previously provided jurisdiction over claims "arising under any of the provisions of this subchapter"—the INA subchapter that includes removal proceedings under § 1229a. 8 U.S.C. § 1329 (1952); ECF No. 24 at 20-21. Section 1329 "was subsequently amended by IIRIRA to make clear that it applies only to actions brought by the United States." *AAADC*, 525 U.S. at 477 n.4. Congress thus made "clear that district court jurisdiction founded on the immigration statute is confined to actions brought by the government," eliminating § 1329 as a basis for district courts to find jurisdiction for claims brought by private parties. *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999).

As to general federal question jurisdiction under § 1331, the basis on which this Court found jurisdiction, *see* op. 18, Congress foreclosed § 1331 jurisdiction for claims related to

---

[2] As the Supreme Court said just this term, "[t]hose who deem legislative history a useful interpretive tool will find that the congressional history of the Limited Review Provision" in this "House Conference Report" relevant to interpreting "the limits on judicial review in various provision of § 1252." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1071-72 (2020) (citing H.R. Rep. 109-72).

removal proceedings by enacting "the unmistakable 'zipper' clause of § 1252(b)(9)." *Id*. at 483. Unlike § 1252(g), which the Supreme Court read as limiting "judicial review of only *some* decisions and actions" "along the road to deportation"—*i.e.*, commencing removal proceedings, adjudicating removal cases, and executing removal orders—the Supreme Court has held that "§ 1252(b)(9) channels judicial review of *all* of them." *Id*. at 482-83 (emphasis in original); *see also id*. at 482 (defining a "zipper clause" as meaning "no judicial review in deportation cases unless this section provides judicial review").[3] In fact, in reading § 1252(g) as applying only to the "discrete" actions mentioned in that section, the Supreme Court noted that, if Congress wanted § 1252(g) to instead "impose a general jurisdictional limitation" on all claims that are somehow related to removal proceedings, Congress clearly knew how to do so because it had enacted just such a general jurisdictional limitation in § 1252(b)(9), which contains no limits to any particular type of action or decision related to removal proceedings and thus "stands in stark contrast to § 1252(g)." *Id*. at 482-83 (§ 1252(b)(9) represents "the normal manner of imposing" a "general jurisdictional limitation"). The Supreme Court's broad reading of 1252(b)(9) aligns with the "*many* provisions of IIRIRA [ ] aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation." *Id*. at 486.

Despite Congress's clear intent in IRRIRA to eliminate jurisdiction for any remaining claims in district courts related to removal proceedings, some courts nonetheless continued to find district court jurisdiction over systemic policy-and-practice claims or claims brought by parties who were not themselves subject to removal proceeding. This line of cases traced to the Supreme Court's decision in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). *McNary* dealt with

---

[3] Of particular relevance here, the Supreme Court noted that the broader list of decisions and actions covered by § 1252(b)(9) includes decisions about scheduling cases and hearings in removal proceedings, including the decision "to reschedule the deportation hearing." 525 U.S. at 482.

a program created by the Immigration Reform and Control Act of 1986 (Reform Act) that allowed certain aliens to seek relief from removal by applying for special agricultural worker (SAW) status. *Id.* at 481-83. The statute provided for review of a denial only through removal proceedings, permitting "judicial review of such a denial only in the judicial review of an order of exclusion or deportation." *Id*. at 486. In *McNary*, a class of alien farmworkers nonetheless sued to challenge "practices and policies adopted by the INS in its administration of the SAW program" that they alleged violated the statute. *Id*. at 487. The district court allowed the claims to move forward despite the jurisdictional limitations of the Reform Act because it held that the suit did "not challenge any individual determination of any application for SAW status but rather attacks the manner in which the entire program is being implemented, allegations beyond the scope of administrative review." *Id*. at 487-88.

When the jurisdictional question reached the Supreme Court, it affirmed that the jurisdictional provisions barred district court review only of challenges to individual applications, not broader policy or practice claims that did not challenge any individual application or removal order. *Id*. at 491-92. The Supreme Court, however, based that conclusion on specific "critical words" in the statute that indicated that the jurisdictional limits referred only to individual determinations on particular applications and that the provision was not aimed at limiting broader challenges to "a group of decisions or a practice or procedure employed in making decisions." *Id*. at 492. As a result, the Supreme Court held that the statute stripped jurisdiction from the district courts only of challenges to "the denial of an individual application." *Id*.

The Supreme Court was clear, however, that Congress "easily could have used broader statutory language" if it "intended the limited review provisions … of the INA to encompass challenges to INS procedures and practices," by, for example, using language channeling "all

causes . . . arising under any of the provisions," or "all questions of law and fact" arising from the program. *McNary*, 498 U.S. at 494. Following *McNary* and the line of cases that followed, Congress amended the INA again in 2005 as part of the REAL ID Act and clarified that it intended § 1252 to have this broader scope. *See* H.R. Rep. No. 109-72, at 173-75. In doing so, Congress specifically added the "arising under" and "all questions of law and fact" language that the Supreme Court said it could use if it intended to bar broader challenges to agency "procedures and practices," and clarified that § 1252(b)(9) bars "[j]udicial review of *all questions of law and fact, including the interpretation of constitutional and statutory provisions, arising from any action taken or proceeding brought* to remove an alien from the United States." 8 U.S.C. § 1252(b)(9) (emphasis added). Congress further stated that, aside from the review authorized under § 1252(a)(5) in the court of appeals, "no court shall [otherwise] have jurisdiction" under any "provision of law . . . to review … such questions of law or fact." *Id*.

When Congress passed the REAL ID Act, it also took steps to eliminate the one other remaining way in which courts had persisted in finding district court jurisdiction over some claims related to the removal process. After IIRIRA, the Supreme Court had interpreted the "jurisdiction-stripping provisions as not barring (*i.e.*, as permitting) review" of challenges to certain removal orders through habeas petitions. *Guerrero-Lasprilla*, 140 S. Ct. at 1072 (citing *I.N.S. v. St. Cyr.*, 533 U.S. 289, 299-305 (2001)). In *St. Cyr* the Supreme Court had held that the "jurisdiction-stripping provisions" should not be read to eliminate district court review of removal orders issued to certain criminal aliens because the statute permitting review in the court of appeals "essentially barred judicial review of removal orders based on an alien's commission of certain crimes," and would otherwise make claims by these individuals unreviewable. *Id*. However, just as it did in *McNary*, the Supreme Court "made clear that 'Congress could, without raising any constitutional

questions'" move what review remained in the district courts to the courts of appeals. 140 S. Ct. at 1071 (quoting *St. Cyr.*, 533 U.S. at 314). "Congress, aware of this precedent (and wishing to substitute review in the courts of appeals for habeas review)," "took up this suggestion" in the REAL ID Act and "made clear that the limits on judicial review in various provisions of § 1252 included habeas review," and by doing so "consolidated" *all* review in the courts of appeals. *Id.*

Congress was clear that its intent in the REAL ID Act was to address "confusion in the federal courts as to what immigration issues can be reviewed, and which courts can review them," "resulting in bifurcated and inefficient review." H.R. Rep. 109-72, 174. This "piecemeal review" that allowed some claims related to removal proceedings to continue to be heard in district courts was "the very opposite of what Congress tried to accomplish in 1996" through IIRIRA. *Id.* Congress, citing the Supreme Court's direction in *St. Cyr* that it could remove what review remained in district courts, again "made clear that review of a final removal order is the only mechanism for reviewing any issue raised in" removal proceedings. *Id.* at 173. Congress thus definitively established that § 1252 barred district court review not just of removal orders, but also of all "decisions and actions leading up to" immigration judges' decisions in removal proceedings, ensuring that, for claims related to removal proceedings, "if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *AAADC*, 525 U.S. at 486.

It was this clear history of § 1252 that the Ninth Circuit addressed in *J.E.F.M.* when it explained that § 1252(b)(9) is "breathtaking in scope and vise-like in grip," and overturned a district court that held it had jurisdiction over a challenge related to the right to counsel in removal proceedings because the district court viewed the PFR process as "insufficient" to provide "meaningful judicial review" of such claims. *J.E.F.M.*, 837 F.3d at 1031-32. "The legislative

history of the INA, as well as amendments to § 1252(b)(9), confirm that Congress intended to channel all claims arising from removal proceedings … to the federal courts of appeals and bypass the district courts." *Id*. at 1033. The Ninth Circuit emphasized, as set out above, that "Congress was legislating against the backdrop of recent Supreme Court law" that "offered a blueprint for how Congress could draft a jurisdiction-channeling statute that would cover not only individual challenges to agency decisions, but also broader challenges to agency policies and practices." *Id*. at 1034. Section "1252(b)(9) neatly tracks the policy and practice jurisdiction-channeling language" the Supreme Court suggested and "channel[s] review of all claims, including policies-and-practices challenges, through the PFR process." *Id*. at 1035. "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." *Id*. at 1031; *see also Viloria v. Lynch*, 808 F.3d 764, 767-68 (9th Cir. 2015) ("It is well established that this court's jurisdiction over removal proceedings is limited to review of final orders of removal" and that "§ 1252(b)(9)'s emphatic jurisdictional restriction" bars review even in cases where no removal order has been issued.); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (dismissing challenge to "procedure" by which agency found aliens "ineligible for asylum" and holding that whenever a claim, "however it is framed, challenges the procedure" for agency determinations linked to removal orders, "it is prohibited by section 1252").

The Ninth Circuit has also properly held, based on the history of § 1252, that "Congress intended" to eliminate claims in district court brought by "organizational plaintiffs." *Padilla*, 953 F.3d at 1150. The "statute's legislative history supports [this] reading," because Congress amended § 1252 "after a period in which organizations and class of persons, many of whom were not themselves in proceedings, brought preemptive challenges to the enforcement of certain

immigration statutes." *Id.* "This history supports the view that Congress intended § 1252(f)(1) to restrict courts' power to impede the new congressional removal scheme on the basis of suits brought by organizational plaintiffs and noncitizens not yet facing proceedings under 8 U.S.C. §§ 1221-1232." *Id.* at 1151; *cf. AILA v. Reno*, 199 F.3d 1352, 1359-60 (D.C. Cir. 2000) ("Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied").

Other courts to consider the question have reached the same conclusion. *See ASAP v. Barr*, 409 F. Supp. 3d 221, 222-26 (S.D.N.Y. 2019) (dismissing as barred by § 1252(b)(9) challenge brought by "a group of organizations dedicated to helping immigrant families" that alleged agency mismanaged process for scheduling hearings in immigration court in a way that denied organizations' clients "a meaningful opportunity to be heard," and rejecting argument that *Jennings* narrowed § 1252(b)(9)'s scope); *P.L. v. U.S. ICE*, No. 1:19-CV-01336, 2019 WL 2568648, at *1-2 (S.D.N.Y. June 21, 2019) (holding that § 1252(b)(9) barred challenges to procedures that allegedly caused "scheduling challenges," made it more difficult to retain counsel, and injured organizations directly by increasing the "time and cost associated with providing legal services"); *Ali v. Barr*, No. 20-CV-3337, 2020 WL 2986692, at *6-8 (S.D.N.Y. June 3, 2020) (§ 1252 barred challenge based on "Organizational Plaintiffs' frustrations" with difficulties caused by uncertain scheduling, finding "no authority in the context of a civil proceeding that requires a judge to rule on any specific timetable—let alone one that is driven by an attorney's personal need for certainty").

In finding that § 1252(b)(9) did not bar jurisdiction, this Court emphasized that the "organizational plaintiffs bring claims alleging systemic problems, independent of any removal orders" and "do not have access to the PFR process for their asserted claims." Op. 17. But this is

exactly the approach of *McNary*, which found a broader challenge was not barred because it did "not challenge any individual determination of any application … but rather attacks the manner in which the entire program is being implemented, allegations beyond the scope of administrative review." *McNary*, 498 U.S. at 487-88. The text and history of § 1252 show that Congress sought to foreclose this precise theory of district court jurisdiction in the various post-*McNary* amendments to the INA. *Jennings*' teaching that § 1252(b)(9) should not be read in an "extreme way" that "no sensible person could have intended," 138 S. Ct. at 840, cannot be read to save these claims that Congress plainly intended § 1252(b)(9) to cover. *See Alvarez*, 338 F. Supp. 3d at 1048-49 (it does not require "an expansive interpretation of § 1252(b)(9)'s 'arising from' language to find that" "issues related to legal representation during removal proceedings" "fall squarely within the purview of the provision" post-*Jennings*).

Moreover, in cases more recent than *Jennings*, the Supreme Court has repeatedly emphasized the broad scope of § 1252(b)(9) that the Ninth Circuit arrived at based on its text, structure, and history. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020) (Congress "eliminate[ed] review in the district courts" for "challenges arising from removal proceedings" under § 1229a and required that the "various challenges" that may relate to those proceedings "must be consolidated in a petition for review and considered by the courts of appeals"); *Regents*, 140 S. Ct. at 1907 (§ 1252(b)(9) is "a jurisdictional bar where those bringing suit" are "asking for review of" *inter alia* "the process by which .. removability will be determined"); *Guerrero-Lasprilla*, 140 S. Ct. at 1070 (2020) (noting that § 1252(b)(9) is a "zipper clause" intended to "consolidate judicial review of immigration proceedings" in courts of appeals).

Accordingly, the Court should reconsider its earlier ruling and dismiss all claims in this case for lack of jurisdiction because all of Plaintiffs' claims are barred by § 1252(b)(9).

III.  **Plaintiffs' claims here are cognizable in the PFR process and even if they were not, Congress can limit Plaintiffs' ability to bring their claims in this Court.**

As the government explained in its motion to dismiss, Plaintiffs acknowledge that the legal questions that they seek to raise here can be raised by aliens through the PFR process. *See* ECF No. 24 at 19-21. And, as the Supreme Court has held, Congress can bar organizations or others from bringing similar claims. *Id*. The Court's finding that "most of Plaintiffs' claims" "would not be cognizable through the PFR process," and that § 1252(b)(9) cannot be read "to bar judicial review of claims that [are] unreviewable through the PFR process" is therefore incorrect. Op. 15-16. The Supreme Court has said that Congress can create "a detailed mechanism for judicial consideration of particular issues at the behest of particular persons" and in doing so, preclude "judicial review of those issues at the behest of other persons." *Block*, 467 U.S. at 349.

The Court held that three claims can move forward in this case based on the conclusion that "these claims would not be cognizable through the PFR process": (1) a challenge to "the immigration court backlog"; (2) APA challenges to agency benchmarks and metrics for the scheduling and completion of removal proceedings in immigration court; and (3) claims that immigration judges are not acting as an "impartial adjudicator." Op. 2, 16. Each of these claims, however, is reviewable in a PFR.

The first two categories of claims relate to scheduling of cases. Plaintiffs allege that the backlog causes delays that make it more difficult to present witness and evidence and to obtain and sustain legal representation, and alternatively that agency metrics and case-completion goals lead to cases being hastened through the system in ways that influence the adjudication. *See* Compl. ¶¶ 111, 128, 154. Courts of appeals, however, regularly hear PFR challenges alleging that scheduling of hearings improperly influenced the outcome, including challenges to decisions to move cases along more quickly by denying a continuance or time to obtain counsel, or

challenges alleging a case was impacted because the agency completed it too slowly. *See, e.g. Hui Ran Mu v. Barr*, 936 F.3d 929, 936 (9th Cir. 2019); *C.J.L.G. v. Barr*, 923 F.3d 622, 631 & n.3 (9th Cir. 2019) (Paez, J., concurring); *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005); *Ahmed v. Holder*, 569 F.3d 1009, 1012, 1014 (9th Cir. 2009) (listing factors Ninth Circuit considers in PFR challenge to immigration judge scheduling decisions, including any "evidence excluded as a result of the denial of the continuance"; "whether good cause exists in a given individual case" to delay hearings or resolution of a case; and remanding after concluding that "[a]dministrative efficiency alone cannot justify the denial of a continuance"); *Briceno-Martinez v. Barr*, 792 F. App'x 542, 543 (9th Cir. 2020) (PFR considering claim that case should be heard "without extraordinary delay"); *Mendez-Garcia v. Lynch*, 840 F.3d 655, 667 (9th Cir. 2016) (PFR addressing claim that "agency's delays" violated aliens' "rights by preventing them from reasonably presenting their cases at a meaningful time").

Plaintiffs acknowledged that challenges related to the case-completion goals and the performance metrics can be raised in PFRs because "[t]he practical effect of both policies on the individuals who Plaintiffs serve would likely take the form of biased decision making or the denial of a continuance, which could form the basis of a petition for review" and cited an example PFR. *See* ECF No. 57 at 19 n. 10 (citing *Raffin v. Gonzales*, 143 F. App'x 26 (9th Cir. 2005)). Plaintiffs also correctly conceded that bias claims, the third claim the Court permitted to proceed, can be raised in PFRs: "petitioners in removal proceedings may raise claims of bias in a petition for review" and a claim of "biased decision making" as a result of agency case-completion goals or performance metrics "could form the basis for a petition for review." ECF No. 57, at 19 n.9 (citing *Reyes-Melendez v. INS*, 342 F.3d 1001, 1007-09 (9th Cir. 2003); *Wang v. Att'y Gen.*, 423 F.3d 260 (3d Cir. 2005)); *id*. at 19 n.10. As with Plaintiffs' other claims, the Ninth Circuit regularly hears

claims that an immigration judge considered improper factors in reaching a decision or was biased. *See, e.g.*, *Hovhannisyan v. Holder*, 577 F. App'x 748, 750 (9th Cir. 2014) (addressing claim that "the immigration judge exhibited bias"); *Bhasin v. Gonzales*, 423 F.3d 977, 989 (9th Cir. 2005) (PFR addressing claim that agency considered improper factors).

The PFR process also allows aliens to bring broader challenges to agency practices. *See, e.g.*, *Naranjo-Aguilera v. INS*, 30 F.3d 1106, 1114 (9th Cir. 1994) (noting that "Petitioners appealing orders of deportation routinely bring statutory and constitutional challenges to INS regulations and policies," and rejecting contention that plaintiffs "will be unable to argue their claims effectively if forced to bring them in the context of appeals from orders of deportation"); *Judulang v. Holder*, 565 U.S. 42, 52 (2011) (overturning agency policy as arbitrary and capricious under the APA in PFR challenge initially raised to the Ninth Circuit); *cf. Shalala v. Ill. Council of Long Term Care*, 529 U.S. 1, 20, 23-24 (2000) (rejecting argument for review under § 1331 outside exclusive channeling provision for any "action arising under the Medicare Act" based on contention that channeling provision would postpone or deny judicial review or be less convenient, and noting that a court of appeals reviewing administrative proceedings "has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record"). Congress was also clear that none of the provisions of § 1252 that "limits or eliminates judicial review" "shall be construed as precluding review of constitutional claims or questions of law" so long as those questions and claims are "raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). In evaluating a comprehensive review scheme, the relevant question is not whether the legal questions can be reviewed through the administrative process alone, but rather whether they can be addressed through the statutory mechanism for administrative

and judicial review as a whole. *See Shalala*, 529 U.S at 23-24; *Elgin*, 567 U.S. at 17.

The Court overlooked these cases showing that the legal questions here can be reviewed in a PFR. Considered in this context, Plaintiffs' argument is not that these issues are not cognizable through the PFR process, but rather that organizations cannot be the ones to raise such claims. While that is true, the Supreme Court has made clear in *Block*, *Thunder Basin*, and the other cases that the government cited that Congress can decide who can raise certain claims or legal questions—and who cannot—and that courts must give effect to this congressional intent so long as it is, as set out above, fairly discernible from the statutory text, structure, and purpose. Although district courts generally "have jurisdiction over civil actions arising under the Constitution and laws of the United States [under] 28 U.S.C § 1331," "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *AFL-CIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). In its decision, the Court did not address *Thunder Basin* or any of these cases holding that Congress can enact a comprehensive review scheme foreclosing claims by other parties or brought in other ways.

*AFL-CIO* is particularly instructive because there the D.C. Circuit held that Congress had enacted just such a comprehensive scheme dealing with "employee relations in the federal sector" where Congress created a "complicated and subtle scheme" that "provides the exclusive procedures by which federal employees" "may assert federal labor-management relations claims." *Id*. at 755-56. That statute, which "establishes a scheme of administrative and judicial review" where agency decisions are "subject to direct review in the courts of appeals," *id* at 752, and the Federal Mine Safety Act scheme the Supreme Court addressed in *Thunder Basin* are both similar

to the INA, which provides for administrative review by the BIA and makes direct review in the courts of appeals the "sole and exclusive means of judicial review" for claims arising from removal proceedings. 8 U.S.C. § 1252(a)(5). *See Massieu v. Reno*, 91 F.3d 416, 420 (3d Cir. 1996) (holding that "*Thunder Basin* involved a statutory-review scheme similar to that of the INA.").

In *AFL-CIO*, plaintiffs argued that their claims nonetheless fell outside that review scheme and could be raised under § 1331. Plaintiffs were not individual federal employees seeking to raise claims under federal labor law, but rather a group of unions seeking to bring a broader "pre-implementation" and "pre-enforcement challenge" to certain executive orders "provid[ing] agencies with certain procedures that they should seek to institute" in labor disputes. *AFL-CIO*, 929 F.3d at 753. The unions challenged these 2018 executive orders as violating, or alternatively as not authorized by, the statutes governing labor relations, and as violating the Take Care Clause, and rather than challenge any particular agency proceedings, sought "relief barring agencies from implementing the executive orders" as a whole. *AFL-CIO*, 929 F.3d at 753-55. The unions argued, much as Plaintiffs do here, that such systemic challenges were still cognizable in district court under § 1331 because the existing statutory review "scheme [did] not provide for meaningful judicial review" of these sorts of claims. *Id*. at 755.

The D.C. Circuit rejected this argument as "foreclosed by the Supreme Court's decision in *Thunder Basin*." *Id*. at 755. Under *Thunder Basin*, when a statute provides for a "comprehensive review process" where "the courts of appeals have exclusive jurisdiction over challenges" to certain types of agency proceedings, the statutory scheme simultaneously forecloses broader "pre-enforcement claims" to how those agency proceedings are conducted. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208-09 (1994). As noted above, where a review scheme "does not distinguish between preenforcement and postenforcement challenges" but instead "applies to all" claims and

provides that "the courts of appeals have exclusive jurisdiction over challenges to agency [ ] proceedings," it forecloses district court jurisdiction over all other claims relating to the agency proceedings, even claims on which the statute is "facially silent." *Id*. The Supreme Court reached a similar conclusion in *Block*, holding that the "presumption favoring judicial review of administrative action" does not apply where a contrary congressional intent can "be inferred" from "the collective import of the legislative and judicial history behind a particular statute," or "inferences of intent drawn from the statutory scheme as a whole." 467 U.S. at 349. "In particular, when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id*.; *see also Sackett v. EPA*, 566 U.S. 120, 130 (2012) ("Where a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not subject to the administrative process, is strong.").

Applying this reasoning, the D.C. Circuit has held that plaintiffs "were required to raise their challenges through the scheme even if that made it *impossible* to obtain particular forms of review or relief." *AFL-CIO*, 929 at 756 (emphasis in original). A "Statute can preclude a claim from being brought in a district court even if it *forecloses* the claim from administrative review and provides no other way to bring the claim." *Id*. (emphasis in original). Thus, in *Am. Fed'n of Gov't Employees v. Sec'y of Air Force*, 716 F.3d 633 (D.C. Cir. 2013), the court rejected a claim by plaintiffs who wished to challenge a generally applicable agency rule and wanted to do so, not through individual suits under the administrative scheme, "but rather sought to do so on a 'nationwide' basis in a APA suit before the district court." *Id*. at 638. The court rejected the claim and held that, even though the "statutory scheme provided no way to assert such a 'nationwide'

attack" and plaintiffs might be less likely to "prevail using one of the[ ] procedures" in the statutory scheme, "that does not mean their claims may be brought outside the [statute's] exclusive remedial scheme" or that plaintiffs could otherwise "resort to the courts." *Id.* Rather, it means that plaintiffs "may not raise the claim at all." *Id*.

Facial challenges to agency practices are routinely channeled through administrative proceedings *before* federal-court review, and for good reason. *Id*. at 639. Administrative exhaustion is "generally required" and "should be applied with a regard for the particular administrative scheme at issue" to prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also McKart v. U.S.*, 395 U.S. 185, 194 (1969) (explaining that courts should avoid piecemeal litigation where a party seeks judicial intervention in "intermediate stages" of agency proceedings, particularly in cases "where the relevant statute provides that certain administrative procedures shall be exclusive"). Section 1252 provides that BIA review and the PFR process are the "exclusive means of review" for any "challenges to [agency] procedures and practices." *J.E.F.M.*, 837 F.3d at 1036. And a comprehensive and exclusive review mechanism such as this "applies to a 'systemwide challenge' to an agency policy … just as it does to the implementation of such a policy in a particular case." *Am. Fed'n of Gov't Employees*, 716 F.3d at 639; *see also Jarkesy v. S.E.C.*, 803 F.3d 9, 12, 28-29 (D.C. Cir. 2015).

The Supreme Court's recent decision in *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020), which considered a different portion of § 1252 addressing expedited removal proceedings, further supports the conclusion that Congress can limit both how certain legal questions can be raised and

who can raise them. *Thuraissigiam* addressed a removal process for which Congress set out certain procedures by statute, *see* 8 U.S.C. § 1225(b), but also limited judicial review related to that process in the IRRIRA amendments to § 1252. *Thuraissigiam*, 140 S. Ct. at 1966 (discussing § 1252's limits on review of a "claim arising from" an expedited "order of removal," leaving certain claims "courts may not review"). Moreover, these provisions have long been interpreted to permit claims based only on injuries to individual affected aliens, eliminating claims based on organizational harms. *See AILA*, 199 F.3d at 1359-60 ("Congress meant to allow litigation challenging the new system" for expedited removal in § 1252 only as provided for by that statute, *i.e.*, "by, and only by, aliens against whom the new procedures had been applied"); *Make the Road New York v. Wolf*, 962 F.3d 613, 628 (D.C. Cir. 2020) (claims permitted only where "aggrieved individuals sue"). In a challenge to the limited review provided by § 1252, the Supreme Court held that the Constitution does not require any particular review of removal proceedings beyond what Congress authorized in § 1252, and as to the limits on what Congress intended to authorize, noted that "[a] major objective of IIRIRA" was "to protect the Executive's discretion from undue interference by the courts." *Thuraissigiam*, 140 S. Ct. at 1964-66 (quotations and citations omitted); *see also Castro v. DHS*, 835 F.3d 422, 433 (3d Cir. 2016) ("if jurisdiction exists to review any claim related to an expedited removal order, it exists only" as provided by § 1252).

Accordingly, the Court should reconsider its prior decision and dismiss all of Plaintiffs' claims for lack of jurisdiction. The Court concluded that "[a]llowing organizational plaintiffs to bring claims alleging systemic problems … does not thwart the purpose of § 1252(b)(9)," op. 17, but that conclusion is incongruous with the text, structure, and history of § 1252(b)(9). When a statute has a "comprehensive" scheme and "legislative history" expressing "clear concern with channeling and streamlining" the "process," it "establishes a 'fairly discernible intent to preclude

district court review," to which the Court must give effect. *Thunder Basin*, 510 U.S. at 216 (quoting *Block*, 467 U.S. at 351). To do otherwise would create precisely the type of fragmentation that Congress sought to foreclose in § 1252. *See* ECF No. 24 at 21-22; *see also Nat'l Assoc. of Immigration Judges v. McHenry*, No. 20-CV-731, 2020 WL 4693166, at *5-6 (E.D. Va. Aug. 6, 2020) (holding based on *Thunder Basin* that creative pleading of a "jurisdictionally precluded lawsuit does not remove it from Congress' prescribed channeling structure" even when pleaded as a "preenforcement," "structural, prophylactic, or preventative" claim); *Massieu*, 91 F.3d at 421 (applying *Thunder Basin* and concluding that § 1252 bars review even where a party is "not, strictly speaking, attacking a final order of deportation").

**IV.     Plaintiffs fail to state any claim for which relief can be granted.**

The government also respectfully requests that the Court reconsider its ruling that some of Plaintiffs' claims state a claim upon which relief may be granted. Even if the Court had jurisdiction over these claims, each should be dismissed under Rule 12(b)(6).

Take Care Clause claim. As the government explained in its motion, the Take Care Clause is non-justiciable, as the Supreme Court long ago explained. ECF No. 24 at 22-23; ECF No. 68 at 26-27; *see Citizens for Responsibility & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 139 (D.D.C. 2018), *aff'd*, 924 F.3d 602 (D.C. Cir. 2019) (noting that *Mississippi v. Johnson*, 71 U.S. 475 (1866) "can be fairly read to suggest that a Take Care Clause claim is outright non-justiciable"). The Court's contrary ruling was based on the conclusion that "[n]either the Ninth Circuit nor the D.C. District Court appear to have doubted that the Take Care Clause could give rise to a justiciable cause of action," op. 24-25, but that conclusion is incorrect.

The Court based its ruling on three cases that mention the Take Care Clause, op. 24, but none of them—and as far as the government is aware, no other case—holds that Plaintiffs can state a claim under the Take Care Clause. In the first case, *Ctr. for Biological Diversity v. Bernhardt*,

the Ninth Circuit discussed the Take Care Clause in the context of a claim that Congress violated the separation of powers by enacting legislation that directed a federal agency to take certain actions. 946 F.3d 553, 561-62 (9th Cir. 2019). Plaintiffs argued that Congress had improperly tried to "interfere with the Executive Branch's" authority under the Take Care Clause and were seeking to *protect* rather than restrain or obtain review of agency authority and discretion, the exact opposite of what Plaintiffs seek here. *Id*. Accordingly, even if the Ninth Circuit had held that this claim could proceed it would not support finding Plaintiffs can state a plausible claim here. But, importantly, this Court's finding that "the Ninth Circuit entertained a claim pursuant to the Take Care Clause" in *Ctr. for Biological Diversity* is not accurate. Op. 24. Rather, the Ninth Circuit held with respect to the "Take Care Clause, [plaintiff]'s complaint fails to state a claim that is plausible on its face." 946 F.3d at 562; *see also id*. at 556 (affirming dismissal of the complaint because plaintiff's "constitutional claims do not allege a plausible basis for relief").[4]

Neither of the other two cases on which this Court relied held that a private party can state a claim under the Take Care Clause. First, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) was a case brought by states, which the Fifth Circuit recognized as "entitled to special solicitude" and standing to bring claims that private parties cannot. *Id*. at 151 ("It is of considerable relevance that the party seeking review here is a sovereign State and not ... a private individual" because "States are not normal litigants for the purposes of invoking federal jurisdiction." (quoting *Massachusetts v. EPA*, 549 U.S. 497 (2007)). Second, *Texas* involved an appeal of a preliminary injunction that was not at all based on the Take Care Clause because the district court had not ruled that plaintiffs were likely to succeed on such a claim. *Id*. at 150. The government argued that the

---

[4] The Ninth Circuit also acknowledged that Congress can, by using "specific language," "foreclose judicial review" of claims, including constitutional claims. *Id*. at 561.

states did not have "standing or a right to judicial review" on any of their claims, *id*., and the Fifth Circuit was clear that nothing in its opinion "address[ed] … the challenge based on the Take Care Clause," *id*. n. 3. There is nothing in *Texas* that indicates that the court "recognized it as a plausible claim." Op. 24; *see NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. Apr. 24, 2018) (noting that Fifth Circuit in *Texas* "expressly declined to address the states' constitutional challenges").

The Court also cited to a discussion in *NAACP v. Trump* of an "internal memoranda" from Attorney General Sessions, from which the Court concluded that "the U.S. Department of Justice understands the Take Care Clause to create some actionable limits on the executive." Op. 24. But *NAACP* says nothing of the sort. The court there noted that the memorandum made "a fleeting reference to the Attorney General's 'duty to … faithfully execute the laws'" but offered no explanation or argument that DACA violated the Clause, and any such explanation would be inconsistent with DOJ's view, contained in an OLC memo, that it was consistent with the "Take Care duty." 298 F. Supp. 3d at 239. Nothing in *NAACP* or the memo it discusses recognizes claims by private parties under the Take Care Clause as in any way actionable.

The Court also incorrectly concluded that the government "did not attack Plaintiffs' first claim for relief on any other grounds" or "take issue with the substance of Plaintiffs' claim as it relates to the asylum-free zones, the backlog, or the INA." Op. 24-25 & n.8. As the government argued, Plaintiffs cannot state a claim under the INA because they point to nothing in § 1229a that requires cases to proceed on any particular schedule and challenge unreviewable discretionary choices about agency priorities under a statute that the agency is charged with implementing. *See* ECF No. 24 at 23; ECF No. 68 at 27. As the Supreme Court has said, "[w]hatever the rule may be concerning deportation … it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch," as immigration is "a field where

flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012) ("principal feature of the removal system is the broad discretion exercised by immigration officials"); *Heckler v. Chaney,* 470 U.S. 821, 831 (1985); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543 (1978) (noting that Supreme Court decisions "could hardly be more explicit" that "administrative agencies should be free to fashion their own rules of procedure"). Even if stating a claim was possible under the Take Care Clause, Plaintiffs could not plausibly do so based on statutory claims that must fail. Moreover, Congress has provided no private right of action under § 1229a beyond the review permitted through a PFR, and the Court correctly dismissed Plaintiffs' challenge to "asylum-free zones" for lack of jurisdiction, op. 16.

Bias claim. The government also respectfully requests that the Court reconsider its ruling that Plaintiffs' have pleaded facts sufficient to state a claim for actual bias. Op. 25-27.

First, although the Court agreed that the APA's waiver of sovereign immunity does not apply where other statutes preclude review, the Court rejected the government's argument that § 1252 precluded review. Op. 25-26. This was incorrect for the reasons set out above and, as a result, there is no waiver of sovereign immunity Plaintiffs' bias or APA claims. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (APA's waiver of sovereign immunity is limited to "prevent[ ] plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes"); ECF No. 24 at 24; ECF No. 68 at 27-28.

Second, the bias claim must be dismissed because Plaintiffs failed to plead "sufficient factual matter" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); ECF No. 24 at 24-30. The Court incorrectly held that Plaintiffs had alleged a plausible claim where they alleged

"a possibility that judges are influenced by factors independent of the merits of a particular case when making their decisions." Op. 27. But Plaintiffs must show more than a possibility. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) ("something beyond [a] mere possibility" is required); *Iqbal*, 556 U.S. at 678 (allegations must show "more than a sheer possibility that a defendant has acted unlawfully"). The burden is on Plaintiffs to plead sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also id.* at 556 (pleading that "merely creates a suspicion" of "a legally cognizable right of action" insufficient). Plaintiffs' lengthy complaint does not contain a single concrete allegation or example of an immigration judge whose decision on an asylum claim was influenced by scheduling or the backlog.

In holding otherwise, the Court cited *Caperton* and *Hurles* as holding that a "procedure that could offer a 'possible temptation' to the average judge to forego the proper burden of proof" is sufficient to state a bias claim. Op. 26. But Plaintiffs' allegations fall far short of the allegations of a direct, substantial, personal connection between a particular judge and a particular litigant at issue in these cases, which dealt with recusal where a judge has a personal interest in the outcome. *See Hurles v. Ryan*, 752 F.3d 768, 791 (9th Cir. 2014) (noting that the judge made factual findings that "involved her own conduct"); ECF No. 68 at 28 (explaining that the Supreme Court in *Caperton* held that a claim of "intolerable probability of actual bias" is limited to the "extreme facts" where a judge has a substantial personal connection to a particular litigant).

The Court also cited statements from the President and former Attorney General addressing "baseless claims," op. 26, but these statements do not relate to the performance metrics or case-completion goals at issue here, and are thus insufficient to state a claim. *See, e.g.*, *Twombly*, 550 U.S. at 553-54 (holding that "parallel conduct" and allegations that two things are connected because they happened at or near the same time insufficient to state a plausible claim); *Iqbal*, 556

U.S. at 680-81 ("bare assertions" or "formulaic recitation of the elements of a constitutional discrimination claim" arguing that the Attorney General adopted a policy because of "its adverse effects upon an identifiable group" not enough); *see also Sangers v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007) ("Conclusory allegations and unreasonable inferences" are "insufficient to defeat a motion to dismiss."); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2582-83 (2019) (Thomas, J., concurring in part) (statements of administration officials insufficient to establish pretext where statements not connected to "Secretary's stated rationale" even if "a judge predisposed to distrust the Secretary or the administration could arrange those facts on a corkboard and—with a jar of pins and a spool of string—create an eye-catching conspiracy web"). Finally, to the extent that the Court found a plausible bias claim based on the "rate of denials for asylum claims in some courts," or "the extreme backlog in the system," op. 26-27, the Court improperly gave no weight to the government's far more plausible explanations for the backlog and grant rates. *See* ECF No. 24 at 25-28; ECF No. 28-31; *Iqbal*, 556 U.S. at 682 (allegations do not "plausibly establish" a claim where there are "more likely explanations").

APA claims. Plaintiffs' APA claims should be dismissed because the APA does not provide a cause of action where there is another avenue for review of agency action. ECF No. 24 at 31-32. In permitting the APA claims to go forward, the Court "decline[d] to address this argument" because it held that § 1252 did not "create an exclusive review mechanism." Op. 28. As set out above, this is incorrect. But also, the Court did not address the government's argument that, in addition to barring claims where another statute "precludes judicial review," a different provision of the APA, 5 U.S.C. § 704, separately requires that "there is no other adequate remedy in a court" to challenge an agency action and that the alternative remedy need to provide identical relief to foreclose APA claims. *See* ECF No. 24 at 31-32; ECF No. 68 at 34. As set out above, each

agency action Plaintiffs challenge can instead be raised through a PFR. An APA claim also cannot be based on challenges such as Plaintiffs' to "agency discretion." *See* 5 U.S.C. § 701(a)(2). "The principal purpose of the APA limitations … is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004) (rejecting APA claims relating to "day-to-day agency management" or that seek to "compel[ ] compliance with broad statutory mandates").

Finally, Plaintiffs fail to state an APA claim because they have not identified any final agency action with *legal* consequences. ECF No. 24 at 30-31. In finding reviewable final agency action the Court noted that courts have considered the "practical consequences" of agency action. Op. 29. But each of the cases the Court cites discusses practical *legal* consequences. *See Gill v. Dep't of Justice*, 913 F.3d 1179, 1184-85 (9th Cir. 2019) (addressing guidelines with "legal force" and "effects" because failure to follow "practical requirement[s]" of guidelines could lead to "direct and appreciable legal consequences"); *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982-83, 988, 990 (9th Cir. 2006) (addressing "annual operating instructions" that imposed "intricate legal obligations" on permit holders, and failure to follow them had "legal consequences" including "administrative sanctions"); *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) (failure to comply with "practical requirement" created by agency had legal consequence, *i.e.*, denial of authorization to operate a mine). None of these cases supports finding "final agency action" based on purely practical effects such as how immigration judges "run their dockets." Op. 30.

## CONCLUSION

The government respectfully requests that the Court dismiss this case in its entirety.

Dated: September 4, 2020                Respectfully submitted,

                                        ETHAN P. DAVIS
                                        Acting Assistant Attorney General

                                        WILLIAM C. PEACHEY
                                        Director

                                        EREZ REUVENI
                                        Assistant Director

                                        */s/ Brian C. Ward*
                                        BRIAN C. WARD
                                        Senior Litigation Counsel
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation,
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Tel: (202) 616-9121
                                        Email: brian.c.ward@usdoj.gov

                                        *Counsel for Defendants*