IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAS AMERICAS IMMIGRANT ADVOCACY CENTER**; **CATHOLIC LEGAL IMMIGRATION NETWORK, INC.**; **INNOVATION LAW LAB**; **SANTA FE DREAMERS PROJECT**; **SOUTHERN POVERTY LAW CENTER**; and **ASYLUM SEEKER ADVOCACY PROJECT**, | Case No. 3:19-cv-02051-IM<br><br>**OPINION AND ORDER** |

                Plaintiffs,

      v.

**JOSEPH R. BIDEN**, in his official capacity as President of the United States; **MERRICK B. GARLAND**, in his official capacity as Attorney General of the United States; **U.S. DEPARTMENT OF JUSTICE**; **EXECUTIVE OFFICE FOR IMMIGRAION REVIEW**; and **DAVID L. NEAL**, in his official capacity as EOIR Director of the United States,[1]

                Defendants.

Stephen W. Manning, Jordan Cunnings, and Tess Hellgren, Innovation Law Lab, The Oregon Trail Building, 333 SW 5th Avenue, Suite 200, Portland, OR 97204; Thomas R. Johnson, Bryan

---

[1] Because Defendants are sued in their official capacities, the successors for these public offices are automatically substituted as Defendants pursuant to Federal Rule of Civil Procedure 25(d).

D. Beel, Heidee Stoller, Nathan R. Morales, and Alletta S. Brenner, Perkins Coie LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209; Melissa Crow, Southern Poverty Law Center, 1101 17th Street, NW, Suite 705, Washington, DC 20036; Rebecca M. Cassler and Gracie H. Willis, Southern Poverty Law Center, 150 East Ponce de Leon Avenue, Suite 340, Decatur, GA 30030. Attorneys for Plaintiffs.

Brian C. Ward, Elissa Fudim, Erez Reuveni, U.S. Department of Justice, Civil Division, PO Box 868, Ben Franklin Station, Washington, DC 20044. Attorneys for Defendants.

Gary M. Berne, Keith S. Dubanevich, Stoll Stoll Berne Lokting & Shlachter, PC, 209 SW Oak Street, Fifth Floor, Portland, OR 97204. Attorneys for amicus curiae, Former Immigration Judges.

Cody B. Hoesly, Larkins Vacura, LLP, 121 SW Morrison Street, Suite 700, Portland, OR 97204. Attorneys for amicus curiae, Professors of Immigration Law, Civil Procedure and Administrative Law.

**IMMERGUT, District Judge.**

When this Court considered Defendants' Motion to Dismiss, ECF 24, the Court declined to dismiss claims aside from those seeking enjoinder of "asylum-free zones," ECF 79. Upon further and more developed briefing, this Court has reconsidered the issues and decides as follows. Because this Court finds no implied private rights of action and no equitable bases for jurisdiction, Plaintiffs' first and second claims, premised on the Take Care Clause and Immigration and Nationality Act's Case-by-Case Adjudication Standards and Impartial Adjudicator Requirement are DISMISSED. As a result, the Motion to Compel, ECF 108, is DENIED as moot. Plaintiffs' remaining claims, three through six, are not affected by this ruling.

## BACKGROUND

Plaintiffs are nonprofit organizations which serve individuals in the immigration court system. ECF 1 at ¶¶ 17–22. They allege, broadly, that Defendants have adopted certain policies and practices that have rendered it nearly impossible for Plaintiffs to deliver legal services to their clients because the immigration court system has been modified to be biased and grossly inefficient. *Id.* at ¶¶ 1–14. The allegations focus on three policies or practices that Plaintiffs have

identified: (1) "asylum-free zones," (2) the Enforcement Metrics Policy, and (3) the family

docketing ("FAMU") directive. *Id*. These allegations give rise to six claims for relief: (1) the

asylum-free zones and the immigration court backlog violate the Take Care Clause of the U.S.

Constitution and the Immigration and Nationality Act ("INA"); (2) the administration of the

immigration courts violates the INA's "impartial adjudicator" requirement; (3) the Enforcement

Metrics Policy violates the Administrative Procedure Act ("APA") because it is unlawful; (4) the

Enforcement Metrics Policy violates the APA because it is arbitrary and capricious; (5) the

FAMU directive violates the APA because it is unlawful; and (6) the FAMU directive violates

the APA because it is arbitrary and capricious. *Id*. at 53–62. Plaintiffs seek injunctive and

declaratory relief to end these programs and to implement any necessary corrective actions. *Id*. at

63.

      Defendants filed a motion to dismiss, ECF 24, and Plaintiffs filed a motion for a

temporary restraining order, ECF 28. This Court denied the temporary restraining order. ECF 52.

This Court denied Defendant's motion to dismiss, except for those claims seeking enjoinder of

the asylum-free zones. ECF 79. Defendants then moved for reconsideration, ECF 84, which this

Court denied, ECF 89. Plaintiffs then filed a motion to compel discovery beyond the

administrative record. ECF 108. This Court then requested supplemental briefing on whether the

Take Care Clause, U.S. Const. art. II § 3, or § 1229a of the INA provide a private cause of

action. ECF 112; *see also* ECF 116 (Defendants' brief); ECF 120 (Plaintiffs' brief). This Court

now considers this supplemental briefing. *See* Fed. R. Civ. P. 54(b) (explaining that "any order

. . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the

parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims

and all the parties' rights and liabilities").

**STANDARDS**

**A.  Implied Private Rights of Action**

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S 560, 568 (1979) (internal quotation marks omitted) (quoting *Cannon v. Univ. of Chi.*, 411 U.S. 677, 688 (1979)). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Congress may so empower litigants expressly or implicitly." *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018).

The Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975), set out a four-factor test to determine whether a private right is implied in a federal statute:

> First, we consider whether the plaintiff is one of the class for whose especial benefit the statute was enacted. Second, we examine legislative history to see if we can discern any intent either to create or to deny a right of action under the statute. Third, we weigh whether implying a right of action would be consistent with the purposes of the legislative scheme. Finally, we determine whether the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).[2] The "critical inquiry" is Congress's intent. *Id*. The Supreme Court has clarified that where Congress has not expressly

---

[2] The Supreme Court in the past has endorsed "the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" of a statute. *Sandoval*, 532 U.S. at 287 (internal quotation marks omitted) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). However, the Supreme Court later "abandoned that understanding." *Id*. (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)); *see also id*. ("Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink.").

created such a right, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy" and that "[s]tatutory intent on this latter point is determinative." *Sandoval*, 532 U.S. at 286; *see also Lil' Man in the Boat, Inc. v. City & County of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021) ("If Congress does not provide a private right of action explicitly within a statute's text, we must determine whether Congress implied one."); *McGreevey v. PHH Mortg. Corp.*, 897 F.3d 1037, 1044 (9th Cir. 2018) (explaining that while the *Cort* factors remain "relevant," the "focus now is on" the question of remedy). A court should not imply a private right "except where ineluctable inferences arise from the [statute] to compel such a finding" *Misc. Serv. Workers, Drivers & Helpers, Teamsters Loc. No. 427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 781 (9th Cir. 1981).

"The decision to recognize an implied cause of action under a statute involves somewhat different considerations than when the question is whether to recognize an implied cause of action to enforce a provision of the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). Unlike when Congress enacts a statute, "[w]ith respect to the Constitution, . . . there is no single, specific congressional action to consider and interpret." *Id*. The Supreme Court has instructed that "[w]hen a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis." *Id*. at 1857. The Supreme Court has also, however, cautioned that "[i]n both statutory and constitutional cases, our watchword is caution," and the Supreme Court has been "reluctant to create new causes of action" in constitutional cases. *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (noting so in a *Bivens* action).

## DISCUSSION

### A. Take Care Clause

Plaintiffs' first claim for relief states that "[t]he Attorney General has violated the Take Care Clause because he has suspended the INA's case-by-case adjudication standards through the abuse of authority and mismanagement of the immigration courts." ECF 1 at ¶ 197. Plaintiffs argue that this "has resulted in the persistence and proliferation of . . . the immigration court backlog." *Id*. Plaintiffs seek "a judicial determination as to the rights and obligations of the parties," and "injunctive relief requiring the Attorney General to comply with his duties as prescribed by Congress." *Id*. at ¶¶ 199–200; *see also id.* at 63 (prayer for relief). Plaintiff does not root this claim in a statutory cause of action but proceeds instead under the Take Care Clause.

In supplemental briefing requested by this Court, Defendants argue that the Take Care Clause, U.S. Const. Art. II, § 3, "does not create a private cause of action against the President or any other defendant." ECF 116 at 6. Defendants primarily rely on a recent out-of-circuit case, *City of Columbus v. Trump*, in which that court declined to find the Take Care Clause creates a private right of action. 453 F. Supp. 3d 770, 800 (D. Md. Apr. 10, 2020); *see also* ECF 116 at 6. Defendants also note the Supreme Court's repeated admonitions that courts avoid creating new constitutional causes of action. ECF 116 at 6–7.

In response, Plaintiffs contend that the Take Care Clause is justiciable. *See* ECF 120 at 9–16. Plaintiffs first argue that "an implied right of action is not necessary to grant equitable relief for specific constitutional violations," and this Court may enjoin the conduct under its traditional equitable powers. *Id*. at 9. Second, Plaintiffs argue that the Take Care Clause does provide a private right of action, citing *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir.

2019). ECF 120 at 11. Finally, Plaintiffs note that this Court would not "infringe on executive discretion" nor engage in "judicial overreach" by ruling on the Take Care Clause claim. *Id*. at 13.

### 1.   No Private Right of Action

This Court first addresses whether the Take Care Clause provides a private right of action. Conscious of the Supreme Court's reluctance to create new causes of action in constitutional cases and finding no unambiguous directive that the Take Care Clause creates a private cause of action, this Court declines to find that it does so here. As the *City of Columbus* court stated, "[t]he viability of the 'Take Care Clause' as a stand-alone cause of action is, to put it lightly, uncertain," and no circuit court has definitively found a private right of action stemming from the Clause. 453 F. Supp. 3d at 800; *see also Robbins v. Reagan*, 616 F. Supp. 1259, 1269 (D.D.C. 1985), *aff'd,* 780 F.2d 37 (D.C. Cir. 1985) ("[T]he Court is unaware of a private right of action created by [Section 3] of the Constitution. The Court will not give this cause of action any further consideration."); *Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 130 (D.D.C. 2018), *aff'd,* 924 F.3d 602 (D.C. Cir. 2019), and *aff'd,* 924 F.3d 602 (D.C. Cir. 2019) ("Whether claims brought directly under the Take Care Clause are even justiciable is open to debate."). While this Court is aware of instances in which courts have considered claims raised under the Take Care Clause, *see, e.g.*, *Ctr. for Biological Diversity*, 946 F.3d 553; *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015); *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), those case did not explicitly hold that the Clause creates a private right. Nor has the Supreme Court has spoken directly on this issue; whether the Take Care Clause is justiciable remans an "open question." *See Citizens for Resp. & Ethics in Wash.*, 302 F. Supp. 3d at 139. When the "watchword is caution," *Hernandez*, 140 S. Ct. at 742, this Court is reluctant to imply a cause of action where none has explicitly been found before.

### 2.    Challenged Conduct is Not Ministerial

Even if this Court were to accept that a viable cause of action exists under the Take Care Clause, those duties challenged in this lawsuit are beyond the purview of the courts because they are not ministerial. In *Mississippi v. Johnson*, the Supreme Court declined to enjoin President Andrew Johnson from enforcing the Reconstruction Acts. 71 U.S. 475, 497–501 (1866). In doing so, the Supreme Court explained that a "ministerial duty"—a "simple, definite duty" in which "nothing is left to discretion"—is "[v]ery different [from] the duty of the President in the exercise of the power to see that the laws are faithfully executed." *Id*. at 498–99. The Supreme Court noted the "general principles which forbid judicial interference with the exercise of Executive discretion." *Id*. at 499.

Plaintiffs seek injunctive relief "requiring the Attorney General to comply with his duties as prescribed by Congress through the INA by taking specific corrective actions to ameliorate and mitigate the dysfunction of the immigration court system," and "restraining Defendants from continuing to thwart the impartial adjudication of asylum claims." ECF 1 at ¶¶ 200, 207. They seek a declaration "as to the rights and obligations of the parties." *Id*. at ¶¶ 199, 206. Plaintiffs do not seek a remedy on a narrow course of conduct regarding immigration courts; Plaintiffs seek wholesale review of how immigration courts are run. These challenged actions are not "ministerial": they are not "plainly defined" duties "to which nothing is left to discretion." *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 602, 608 (D.C. Cir. 1974); *Johnson*, 71 U.S. at 497. Though Plaintiffs contend that the claim they are asserting is that the Attorney General has impermissibly suspended or limited the INA's case-by-case adjudication standards, ECF 120 at 14, the claim emanates from discretionary executive branch decisions about how to run the immigration court system, *e.g.*, the Enforcement Metrics Policy and FAMU directive. And any judicial determination would "require . . . court supervision of the performance of duty by the

PAGE 8 – OPINION AND ORDER

executive branch." *Nixon*, 492 F.2d at 605; *see also Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (explaining "any effective [remedial] plan would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches"). Though Plaintiffs argue otherwise, "a Take Care challenge in this case would essentially open the doors to an undisciplined and unguided review process for all decisions made by the Executive Department." *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, 1139 (S.D. Cal. 2018), *aff'd,* 915 F.3d 1213 (9th Cir. 2019). This Court accordingly declines to entertain such a challenge here.

### 3.  No Grant of Equitable Relief

Plaintiffs contend that, even without an implied private right of action, "this Court may grant equitable relief on Plaintiffs' Take Care Clause claim," citing *Armstrong v. Exceptional Child Center, Inc*. ECF 120 at 9; *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

In *Armstrong*, the Supreme Court looked to Congressional "'intent to foreclose' equitable relief," such as by creating an alternative remedial scheme. 575 U.S. at 328 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)). Plaintiffs argue that "the INA does not establish any alternative specific remedy for systemic violations of the case-by-case adjudication standards." ECF 120 at 10. Defendants contend that "the INA provides for a particular, but limited, cause of action to enforce the statute," therefore precluding other methods of review. ECF 116 at 12 n.5. While § 1229a itself does not provide for a specific remedy for the violation of case-by-case adjudication standards, as explained below, the INA sets out a comprehensive remedial process for removal proceedings. *See* 8 U.S.C. § 1252. This reveals a

Congressional intent to foreclose other means of equitable relief. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981) (noting that given the "elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens"); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (noting the applicability of the canon that "the specific governs the general" is "particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions" (internal quotation marks and citation omitted)). When the statutory scheme "'display[s] a[n] intent to foreclose' the availability of equitable relief . . . [w]e have no warrant to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of a judge-made action at equity." *Armstrong*, 575 U.S. at 329.

**B.  8 U.S.C. § 1229a**

Plaintiffs' second claim for relief states that "[t]he INA requires that an impartial adjudicator preside over removal hearing and decide cases," ECF 1 at ¶ 202, and "[i]n direct contravention of the INA, Defendants have impeded judges from serving as impartial adjudicators," *id.* at ¶ 204. Plaintiffs seek injunctive relief "restraining Defendants from continuing to thwart the impartial adjudication of asylum claims." *Id.* at ¶ 207.

In their supplemental briefing, Defendants contend that § 1229a does not create a private cause of action for Plaintiffs to sue the Executive Branch. ECF 116 at 14. Defendants explain that "[o]n its face, § 1229a contains no reference to a private right of action." *Id.* at 14–15. Following the directives of the Supreme Court in *California v. Sierra Club*, 451 U.S. 287, 297 (1981) and *Sandoval*, 532 U.S. at 286, that courts should focus their inquiry on whether Congress intended to create a remedy, Defendants argue that "Section 1229a is silent to the creation of a remedy," and this silence is "determinative." ECF 116 at 15. Additionally,

Defendants argue that analysis of the *Cort* factors yields the same result. *Id*. at 16–18.

Defendants explain that they could find only one case holding that § 1229a creates a private right

of action. *Id*. at 18 (citing *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036 (C.D.

Cal. 2019)). But Defendants contend that the court in that case "improperly applied *Sandoval* and

*Cort*" by focusing on "rights-creating language" despite the Supreme Court's directive to focus

on remedy-creation. *Id*. at 18–19.

Plaintiffs argue first that regardless of a private right under the INA, "Plaintiffs . . . seek

to invoke the Court's equitable power to enjoin executive conduct that is unconstitutional or

*ultra vires*." ECF 120 at 16–17. Plaintiffs explain that courts have jurisdiction to hear such

"nonstatutory review" suits pursuant to their general federal question jurisdiction, and

nonstatutory review is appropriate here as their claims implicate constitutional and statutory

concerns. *Id*. at 17–18. Second, Plaintiffs argue that this Court should reach the same conclusion

as the *Torres* court and find an implied private right of action under § 1229a, because an

application of the *Cort* factors suggests such a right exists. *Id*. at 20–22.

### 1. No Private Right of Action

The parties appear to agree, and this Court finds, that there is no express private right of

action in § 1229a. *See generally* 8 U.S.C. § 1229a; ECF 116 at 14–15; ECF 120 at 20–23

(applying *Cort*). Thus, this Court considers whether the statute contains an implied right and

concludes it does not.

As the Supreme Court has stressed, "the 'determinative' question is one of statutory

intent. If the statute itself does not 'displa[y] an intent' to create 'a private remedy,' then 'a cause

of action does not exist and courts may not create one, no matter how desirable that might be as a

policy matter, or how compatible with the statute.'" *Abbasi*, 137 S. Ct. at 1855–56 (quoting

*Sandoval*, 532 U.S. at 286–87). Section 1229a is silent as to a remedy beyond referencing those

remedies provided in § 1252. *See* 8 U.S.C. § 1229a(b)(5)(D) (discussing consequences for failure

to appear). Section 1252 details the various avenues through which judicial review may be

sought. *See generally* 8 U.S.C. § 1252. "[W]hen legislation expressly provides a particular

remedy or remedies, courts should not expand the coverage of the statute to subsume other

remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458

(1974); *see also Middlesex Cnty. Sewerage Auth.*, 453 U.S. at 14 (noting that given the

"elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by

implication additional judicial remedies for private citizens"). Here, Congress has provided

particular remedies, and this Court should not venture to expand the remedies available and to

whom remedies are available when there is no clear Congressional intent to do so. Moreover,

this Court "assume[s] that Congress will be explicit if it intends to create a private cause of

action." *Abbasi*, 137 S. Ct. at 1856. Section 1229a evinces no such explicit intention. *See also*

*Sierra Club*, 451 U.S. at 296 ("This silence on the remedy question serves to confirm that in

enacting the Act, Congress was concerned not with private rights . . . .").

Moreover, considering the *Cort* factors leads this Court to the same conclusion. First,

considering whether the plaintiffs are "of the class for whose especial benefit the statue was

enacted," this Court looks to whether "the statute create[s] a federal right in favor of the

plaintiff[s]." *Cort*, 422 U.S. at 78. The text of § 1229a creates rights in favor of "aliens."[3] *See,*

*e.g.*, 8 U.S.C. § 1229a(b)(4) (providing for certain "rights" and "privilege[s]" that "the alien shall

have" during a proceeding); *id*. § 1229a(c)(2) (stating the alien's burden of proof); *id*.

§ 1229a(c)(6)–(7) (providing that the alien "may file" a motion to reconsider or reopen). Even

---

[3] Under the INA, alien means "any person not a citizen or national of the United States."
8 U.S.C. § 1101(a)(3).

assuming Plaintiffs, nonprofit legal services providers, benefit from the statute's provisions, *see* ECF 120 at 21, "[t]he question is not simply who would benefit from the [statute], but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club*, 451 U.S. at 294. The text of the statute indicates that the relevant beneficiaries here are noncitizens, not legal aid organizations who may incidentally benefit from the provisions. Though Plaintiffs cite to references in the text and legislative history invoking the right to counsel and efforts to improve counsel, ECF 120 at 21, such evidence reinforces that the Congress intended to benefit and confer rights on aliens subject to removal proceedings, one of such rights being counsel. *See* 8 U.S.C. § 1229a(b)(4)(A) (explaining "the alien shall have privilege of being represented . . . by counsel"); *id*. § 1229(a)(1)(E) (explaining "[t]he alien may be represented by counsel"); *id*. § 1229(b)(2) (providing for lists of pro bono counsel); List of Pro Bono Legal Service Providers, 69 Fed. Reg. 55,662, at 55,662–63 (Sept. 17, 2014) (discussing purpose and importance of providing list of pro bono counsel to aliens in removal proceedings).

Second, this Court considers whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." *Cort*, 422 U.S. at 78. As explained above, there is insufficient evidence of Congressional intent, explicit or implicit, to create a private right or remedy for Plaintiffs of the sort in this matter. Consideration of these first two factors is dispositive. *See Sierra Club*, 451 U.S. at 297–98 (explaining that the third and fourth "factors are only of relevance if the first two factors give indication of congressional intent to create the remedy").[4]

---

[4] For completeness, this Court notes that the fourth factor, whether the cause of action is traditionally relegated to state law, is inapplicable here, as immigration is a concern of federal law. As to the third factor, whether an implied private right of action is consistent with the purposes of the INA, "[w]ithout evidence of a congressional intent to create both a private right and a private remedy, a private right of action 'does not exist and courts may not create one, no

Plaintiffs ask this Court to "reach the same conclusion" as in *Torres v. United States Department of Homeland Security*, in which that court found an implied private right of action under § 1299a. ECF 120 at 20; *see Torres*, 411 F. Supp. 3d at 1058–59. This Court notes at the outset that *Torres* is not binding on this Court. *Torres* is also distinguishable. While plaintiffs in that case were "immigrant detainees and legal organizations," *id*. at 1044, the *Torres* court's analysis of the *Cort* factors focused nearly exclusively on the immigrant detainees, a class of plaintiffs missing from this action. *See id*. at 1059 ("The plain meaning of these provisions is that a *class of persons—individuals in immigration proceedings*—have a 'right' or 'privilege' to be represented . . . ." (emphasis added)). Though the *Torres* court noted that the "judicial task is to . . . determine whether [the statute] displays an intent to create . . . a private remedy," it instead focused on "whether there is rights-creating language." *Id*. at 1058 (internal quotation marks and citation omitted). Finally, the court found that "[a] private right of action is . . . consistent with [the] legislative scheme, and directly advances the main purpose of the INA." *Id*. at 1059. This very well may be the case; but without finding legislative intent to create a private remedy, there is no cause of action, "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286; *see also Sierra Club*, 451 U.S. at 297 ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."). This Court accordingly declines to follow *Torres*.

---

matter how desirable that might be as a policy matter, or how compatible with the statute.'" *UFCW Loc. 1500 Pension Fund*, 895 F.3d at 699 (quoting *Sandoval*, 532 U.S. at 286–87).

2.  **Nonstatutory Review is Not Appropriate**

Finally, Plaintiffs cite the doctrine of "nonstatutory review," which, according to Plaintiffs, "derives from courts' traditional, inherent authority to review and prospectively enjoin or declare unlawful *ultra vires* or unconstitutional action by the Executive" and is "based on the well-established presumption in favor of judicial review of executive action in the absence of 'clear and convincing evidence of contrary legislative intent.'" ECF 120 at 17 (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)); *see also Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958) (finding district court had jurisdiction to "strike down an order . . . made in excess of [the agency's] delegated powers and contrary to a specific prohibition in the Act"); *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019) (explaining that though "the APA is the general mechanism by which to challenge final agency action," "this does not mean the APA forecloses other causes of action").

"The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*." *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002). That court distilled "certain critical factors [that] must be present to invoke nonstatutory review": (1) "that the agency's nonfinal action must 'wholly deprive the [party] of a meaningful and adequate means of vindicating its . . . rights'" and (2) "that Congress must not have clearly intended to preclude review of the agency's particular determination." *Id.* at 42–43 (quoting *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin. Inc.,* 502 U.S. 32, 43 (1991)). The Ninth Circuit has explained that on top of the party being deprived of a way to vindicate its rights, "the challenged . . . action must be ultra vires, i.e., it must contravene 'clear and mandatory' statutory language." *Pac. Mar. Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016). The Ninth Circuit has also explained that nonstatutory review has been "narrowly construed." *Baker v. Int'l All. of*

PAGE 15 – OPINION AND ORDER

*Theatrical Stage Emps. & Moving Picture Operators of U.S. & Can.*, 691 F.2d 1291, 1294 (9th Cir. 1982); *see also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (explaining that the invocation of this jurisdiction "is extraordinary" and "extremely narrow in scope" (internal quotation marks and citation omitted)).

Here, cognizant that nonstatutory review should be invoked only rarely, in narrow circumstances, the Court finds its application in this case is inappropriate. Plaintiffs are able to, and in fact do, bring their case based on the specific review provisions of the APA. *See Nova Oculus Partners, LLC v. U. S. Food & Drug Admin.*, No. 20-CV-1174 (DLF), 2020 WL 7230678, at *3 (D.D.C. Dec. 8, 2020); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007). Though the Ninth Circuit has ruled that the APA—while the "general mechanism by which to challenge final agency action"—does not "foreclose[ ] other causes of action," here, the reliance on the APA to challenge conduct and policies underlying the INA claims shows that Plaintiffs are not "wholly deprived" of judicial review and a vindication of their rights. *Sierra Club v. Trump*, 929 F.3d at 699. Thus, nonstatutory review doctrine is inappropriate in this case.

**CONCLUSION**

Because this Court finds no implied private rights of action and no equitable bases for jurisdiction, Plaintiffs' first and second claims, premised on the Take Care Clause and Immigration and Nationality Act's Case-by-Case Adjudication Standards and Impartial Adjudicator Requirement are DISMISSED. Thus, the Motion to Compel, ECF 108, is DENIED as moot.

**IT IS SO ORDERED**.

DATED this 24th day of November, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge